UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-14317-CIV-MARTINEZ/LYNCH

CHRISTOPHER S. FAULKNER, AMANDA M. JAMES-FAULKNER,
AND minors CHLOE A. JAMES-FAULKNER AND NAYA C.
JAMES-FAULKNER, by and through CHRISTOPHER S.
FAULKNER AND AMANDA M. JAMES- FAULKNER, as their
natural parents and next of friends,

    Plaintiffs,

v.

BRAD GRASKE, LISA CARRASQUILLO, AND
FRED WILLIAMS,

    Defendants.
_____/



FILED by ___ D.C.
FEB 1 1 2008
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (DE 9 & 12)

**THIS CAUSE** comes before this Court upon an Order of Reference and the above Motions. Having reviewed the Motions and the various Responses thereto, this Court recommends as follows:

### BACKGROUND

1. The Plaintiffs' Complaint concerns the response of the Department of Children and Family Services ("DCF") to a report of child abuse. On December 25, 2003, DCF received an anonymous tip that one of the Plaintiff's children had a buttocks rash and that the other had a black eye. DCF assigned Defendant Graske to investigate, and Mr. Graske along with Officer Vega went to the Plaintiffs' home that day.

2. Amanda James-Faulkner, the children's mother, denied Mr. Graske and Officer Vega entrance into the home. Mr. Graske nevertheless was able to interview one of the children at another location. The child told Mr. Graske that her parents were treating her rash and that her sibling's black eye was the result of accidently falling against a table while playing. That same day, December 25th, Officer Vega wrote a police report concluding that "no exigent circumstances existed to believe the alleged victims were in danger of being or having been abused." Officer Vega cited in part the fact that Mr. Graske was able to visit with the children after speaking with the mother.

3. The next day, on December 26th, Mr. Graske filed an Affidavit with the Circuit Court for St. Lucie County, Florida. Mr. Graske described the children's injuries and added that their home environment was filthy and constituted a hazardous condition. These attestations, the Plaintiffs contend, were false and deliberately misleading since Mr. Graske did not include the given explanations for the injuries and lacked personal knowledge of the living conditions inside the home.

4. The Circuit Court responded to Mr. Graske's report by issuing an Order granting DCF access to the Plaintiffs' children. With this Order in hand, Mr. Graske and Officers Carrasquillo and Williams, the two other named Defendants, returned to the Plaintiffs' home. According to the Plaintiffs, the home

investigation occurred as follows: Officer Williams held the parents in their living room under threat of violence and with his service revolver drawn. Meanwhile Defendants Graske and Carrasquillo took one of the children into the bedroom and interrogated the child for a significant period of time behind a closed door and outside the parents' presence. The Defendants then searched the whole house. This occurred despite the mother's assurance that she would make the children available to Mr. Graske in the presence of an attorney and would cooperate with the court order. Ultimately no abuse was found.

5. The Plaintiffs protest the Defendants' actions of December 26, 2003. The Plaintiffs protest that the Defendants acted without any evidence of immediate danger to, or abuse of, the children; obtained a court order in a false and fraudulent manner; and acted beyond the scope of the order and without the benefit of a lawful warrant or arrest when they searched their whole house. The record does not contain the reports or the order in question.

## **DISCUSSION**

Ruling on the Defendants' Motions requires analysis under Rule 12(b)(6) for failure to state a claim, a standard which ultimately requires this Court to accept the Plaintiffs' well-pled factual allegations as true and to draw all reasonable inferences in its favor. See Morrison v. Amway Corp., 323 F.3d

920, 924, n.5 (11th Cir. 2003) and <u>Oxford Asset Mgt., Ltd. v. Jaharis</u>, 297 F.3d 1182, 1188 (11th Cir. 2002). Therefore the Complaint is subject to dismissal if the Plaintiffs can prove no set of facts to support their claims or if the alleged facts fail to state a cognizable theory for relief, <u>see</u>, <u>e.g.</u>, <u>Glen v. Club Mediterranee S.A.</u>, 365 F.Supp.2d 1263, 1273 (S.D. Fla. 2005); or if the Plaintiffs' allegations present a dispositive legal issue precluding relief such as the affirmative defense of qualified immunity, <u>see</u> <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1022 (11th Cir. 2001).

To begin with it must be said that the Complaint does not set out clear, discrete claims for relief. Rather than specifying exactly what rights were violated, by whom, and how, the Complaint instead makes general reference to the investigation events and invokes a wide-range of constitutional and statutory provisions. The need for specificity is greater in pleading cases such as this. <u>See</u> <u>Lawson v. Curry</u>, 244 Fed.Appx. 986, 988 (11th Cir. 2007). Nevertheless the basic premise of the Plaintiffs' grievance is clear, from which this Court discerns two main legal theories. The Plaintiffs allege in essence that their Fourteenth Amendment due process rights were violated and that their Fourth Amendment rights against unreasonable search and seizure were violated. The Plaintiffs bring their claims under 42 U.S.C. § 1983.

Together the Defendants raise the defense of qualified immunity. In a recent opinion, the Eleventh Circuit explained that "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Al-Amin v. Smith, 2008 WL 60018, *4 (11th Cir. 2008). "While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss." Walker v. Prieto, 414 F.Supp.2d 1148, 1151 (S.D. Fla. 2006) (citing Williams v. Ala. State Univ., 102 F.3d 1179 (11th Cir. 1997)). See also, Epps v. Watson, 492 F.3d 1240, 1243 (11th Cir. 2007). When the qualified immunity inquiry occurs at this stage in the proceedings, it and the Rule 12(b)(6) standard become intertwined. See Lawson, 244 Fed.Appx. at 987. The predicate to the defense — that the Defendants are government officials who acted within their discretionary authority — is clear.

First this Court must undertake the threshold inquiry of whether the Plaintiffs' allegations, if true, establish a constitutional violation. See Al-Amin, 2008 WL 60018 at *4. "[P]arents have a constitutionally protected liberty interest in the care, custody and management of their children", and consequently, parents must be accorded due process before being

deprived of that right. Doe v. Kearney, 329 F.3d 1286, 1294 (11th Cir. 2003). That right, however, is not absolute: the State has its own profound interest in the welfare of children, in particular, sheltering them from abuse. Id. "The right to familial integrity, in other words, does not include a right to remain free from child abuse investigations." Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3rd Cir. 1997). The State of Florida has set forth its procedure for initiating protective investigations in response to reports of child abuse. This procedure is found at § 39.301, Fla. Stat. The relevant question therefore is whether the Defendants properly obtained entrance into the family home for investigatory purposes.

Notably the Plaintiffs raise no objection to neither Mr. Graske's initial contact on December 25th nor, importantly, the option of obtaining a court order. The Plaintiffs' objection instead concerns whether that Order was well-founded. Officer Vega had found no exigent circumstances, and in his Affidavit, Mr. Graske omitted information about the children's injuries and made an uninformed representation about the home's condition. The dispositive issue, however, goes beyond the accuracy of the Affidavit's contents. What is dispositive is whether the investigation, taken on the whole, comports with the statute's requirements. In other words, even after accounting for the

allegedly baseless allegations, did Mr. Graske still have a duty to complete the interview and home inspection.

Section 39.301(6), Fla. Stat., states that the investigator's "assessment of risk" "must include a face-to-face interview with the child, other siblings, parents, and other adults in the household and an onsite assessment of the child's residence." Mr. Graske's initial attempt on December 25th was only partially successful in this regard, and the basic circumstances of the situation remained consistent with the need for further investigation. The basic facts remained that (1) a child abuse report had been filed, (2) those children subject of the report did have the reported injuries, and (3) the parents had denied full access. Amending the disputed portions of the Affidavit would not have changed this. First, although there was an explanation offered for the injuries, that explanation came from one of the subject minors, herself. Second, although Mr. Graske was denied entrance into the home, that does not mean he could not see into the home to judge its appearance. At any rate, the investigation would have been justified regardless of the state of the home. And third, it is true that Officer Vega found "no exigent circumstances" of abuse, but this could have meant either no immediate threat of harm, no grounds warranting immediate removal, or no basis for a criminal investigation. (Section 39.301(2), Fla. Stat., contemplates a parallel

investigation by local law enforcement.) In any event, Officer Vega's report was neither dispositive of the matter nor extinguished Mr. Graske's investigatory responsibilities.

In short, Mr. Graske had a statutory obligation to conduct interviews and an onsite assessment, and the underlying, core facts warranted that investigation. Since that statute, § 39.301, Fla. Stat., is constitutional, see generally, Dufresne v. State, 826 So.2d 272, 278 (Fla. 2002), the overall investigation was proper. As to how that investigation was carried out, there appears to be little case law on the subject to further guide the analysis. There is the Kearney opinion, cited above, wherein the Court explained that "due process is a flexible concept — particularly where the well-being of children is concerned — and deciding what process is due in any given case requires a careful balancing of the interests at stake, including the interests of parents, children, and the state." Kearney, 329 F.3d at 1297. Notably the Court was addressing these due process rights in the context of a warrantless removal. Indeed the common theme in the cases cited by the Plaintiffs is some sort of removal. See Hatch v. Dept. for Children, Youth & Their Families, 274 F.3d 12 (1st Cir. 2001), Weller v. Dept. of Soc. Servs., 901 F.2d 387 (4th Cir. 1990), and Hooks v. Hooks, 771 F.2d 935 (6th Cir. 1985). Here the subject is not removal, but rather an initial investigation, and it logically follows that for a situation less

intrusive than a removal, due process considerations are more flexible still. Implicit in the foregoing cases, moreover, is the State's prerogative to conduct at least an initial investigation into a report of child abuse in order to judge whether removal is even warranted.

The Kearney Court held that the social workers' warrantless removal of the children did not violate the plaintiffs' constitutional rights, thereby ending the qualified immunity analysis at the first point of inquiry. See id. at 1299. But even if the instant Plaintiffs' version of events did state a violation of their constitutional rights, this Court next would have to decide whether that constitutional right was clearly established. Or, in other words, "whether the state of the law at the time of the events in question gave respondents fair warning that their alleged treatment of the plaintiff was unconstitutional." Al-Amin, 2008 WL 60018 at *4 (editorial marks omitted). This second prong of the qualified immunity analysis lends further strength to the Defendants' position. The Plaintiffs make no showing that the Defendants acted contrary to firm legal authority. The fluidity of due process in child protective cases, as Kearney explains, instead creates very individualized, fact-specific situations. "Those interests", that is, the competing interests of the parents, children, and the State, "may be implicated to varying degrees depending on the

facts of an individual case, which will necessarily affect the degree of procedural due process required." <u>Id.</u> at 1297. This fluidity means that courts should "consider <u>all</u> relevant circumstances, including the state's reasonableness in responding to a perceived danger <u>as well as</u> the objective nature, likelihood, and immediacy of danger to the child." <u>Id.</u> at 1295.

Another child protective services case, <u>Sansbury v. Dept. of Children & Family Servs.</u>, 2006 WL 4960054 (M.D. Fla. 2006), discusses this second point of inquiry in more detail. The <u>Sansbury</u> Court, despite more egregious factual allegations than the one at bar, still found no violation of clearly established law. This is because child abuse investigators, by the nature of their jobs, "almost never act within contours of 'clearly established law.'" <u>Id.</u> at *8 (quoting <u>Frazier v. Bailey</u>, 957 F.2d 920 (1st Cir. 1992)). "Thus it is no surprise that state officials who investigate allegations of child abuse and in so doing disrupt a family have been entitled to qualified immunity." <u>Id.</u> (citing <u>Foy v. Holston</u>, 94 F.3d 1528 (11th Cir. 1996)). And it should be noted that in <u>Sansbury</u> the plaintiffs complained of an incomplete and deficient investigation, one that needlessly left the children in harm's way. Thus, the plaintiffs alleged, the defendants had breached their duty "to conduct a reasonable investigation of each and every complaint made, determine whether reasonable cause existed for a finding of abuse or neglect,

prepare a report, and protect the minor children from abuse." Id. at *3. The instant case, by contrast, presents the opposite situation — an investigation that allegedly was pursued too far.

The foregoing establishes that Mr. Graske meets the standard for qualified immunity for pursuing the abuse investigation, including securing the court order for purposes of a home inspection and interviews. The other facet of the Plaintiffs' Complaint concerns how the Defendants carried out the investigation once they had the court order. With respect to Officer Williams, the Plaintiffs object to how he brandished his weapon. With respect to Mr. Graske and Officer Carrasquillo, the Plaintiffs object to their interview of the children in a separate location behind a closed door. And with respect to all three Defendants, the Plaintiffs object to their search of the whole house. Undoubtedly the investigation posed a significant intrusion into the family home, but as explained above, the Defendants were carrying out the State's interest in protecting the children's welfare as well as their statutory duties in performing the investigation. Because the home investigation was the natural extension of, and indeed a statutorily mandated part of, the process, the Defendants enjoy the same qualified immunity with respect to the Fourth Amendment claim as they do for the Fourteenth Amendment claim, discussed above. See Kearney, 329 F.3d at 1299 (explaining that "[f]or the same reasons that

Appellants cannot demonstrate a procedural due process violation, neither can they demonstrate a Fourth Amendment violation.").

This Court adds, moreover, that the Plaintiffs' allegations show no unreasonable or egregious behavior on the Defendants' part. Interviewing children subject of an abuse report separately and apart from their parents (the possible abusers) is reasonable. Proceeding with the investigation despite the parents' assurance of cooperation after they hire an attorney is also reasonable. Subsection (5)(a) of the governing statute, § 39.301, Fla. Stat., lists out the rights and considerations to be accorded parents during an investigation. While a parent has the right to obtain his or her own counsel, the statute does not give the parent the right to stay the investigation until the parent secures the presence of an attorney. Neither must Mr. Graske have waited to enforce the order through a contempt proceeding. The search of the house was reasonable in light of the need for "an onsite assessment of the child's residence." And lastly, Officer Williams' display of his sidearm was reasonable in light of overall confrontational circumstances, including the Defendants' need of a court order to complete the investigation in the first place. In the end analysis, "[w]hatever disruption or disintegration of family life the [Plaintiffs] may have suffered as a result of the [State]'s child abuse investigation does not, in and of itself, constitute a constitutional deprivation."

Croft, 103 F.3d at 1125-26.

This Court sees no need to decide whether the Defendant Officers have qualified immunity by virtue of "arguable probable cause", as well, since the foregoing already shows that they acted with legitimate authority. Nevertheless this Court will address the case of Wooley v. City of Baton Rouge, 211 F.3d 913 (5th Cir. 2000), cited by the Plaintiffs. The police officers in Wooley were denied qualified immunity but under fundamentally different facts. First, the police officers effected a transfer of custody, removing the child from his home and taking him to the home of another. The present situation involves only an initial investigation. Second, the order under which the officers acted simply granted temporary custody; it did not direct law enforcement to actually move the child from one home to another. Indeed the officers, themselves, were unsure whether the order compelled the child's physical removal. Third, there was no suggestion of abuse or harm to the child. Altogether this meant that the officers lacked any authority to interfere with the child's familial interests or his right to be free of unreasonable search or seizure. Rather than support the Plaintiffs' position, Wooley illustrates how the Defendant Officers were acting reasonably and with legal authority. Nor is this Court persuaded that the Defendant Officers acted beyond the scope of the issued order. Granting DCF access to the children

reasonably implies having sufficient access to conduct a meaningful investigation as well as conducting the investigation within a secured environment.

## **CONCLUSION**

There is no doubt of the Plaintiffs' right to the sanctity of home and family. That right is not absolute, however, and the Defendants were acting under the State's interest in protecting children's welfare. Namely, Mr. Graske obtained the court order and the assistance of law enforcement in order to carry out and complete the investigation. Whether the Defendants' actions are beyond reproach is not the legal standard. Whether the Defendants violated clearly established right is the standard, but under the present allegations, this Court cannot conclude that the Defendants did so. This Court therefore finds the Defendants to be immune from suit under the Plaintiffs' two principal counts.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendants' Motions to Dismiss be **GRANTED**. In light of the important familial interests involved and the absence of the various reports and the order subject of the Complaint, this Court recommends further that the Complaint be dismissed without prejudice to amend in the event the Plaintiffs are better able to plead their claims. See Silva v. Bieluch, 351 F.3d 1045, 1048-49 (11th Cir. 2003).

The parties shall have ten (10) days from the date of this

Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 11th day of February, 2008.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jose E. Martinez
    Phillip E. Kuhn, Esq.
    Allen C. Sang, Esq.
    William E. Calnan, Esq.