UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-14317-CIV-MARTINEZ/LYNCH

CHRISTOPHER S. FAULKNER, AMANDA M. JAMES-FAULKNER,
AND minors CHLOE A. JAMES-FAULKNER AND NAYA C.
JAMES-FAULKNER, by and through CHRISTOPHER S.
FAULKNER AND AMANDA M. JAMES- FAULKNER, as their
natural parents and next of friends,

    Plaintiffs,

v.

BRAD GRASKE, LISA CARRASQUILLO, AND
FRED WILLIAMS,

    Defendants.
_____/



## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (DE 46 & 47)

**THIS CAUSE** comes before this Court upon an Order of Reference and the above Motions. Having reviewed the Motions, Defendant Graske's Supplemental Memorandum (DE 49), and the Plaintiffs' Response (DE 48), noting that no Reply was filed, this Court recommends as follows:

### BACKGROUND

1. The Plaintiffs' First Amended Complaint concerns the response of a Department of Children and Family Services ("DCF") investigator to a report of possible child abuse. On December 25, 2003 an anonymous caller called DCF's hotline. The caller reported parental alcohol use, a parent with "dirty clothes and dirty feet", and a "messy" home environment with no permitted

company. The caller also reported two specific medical concerns. One of the three minor children had a rash which the parent attributed to "impetigo", or streptococcal infection, that was being treated with Neosporin, and which the child was warned not to mention to others. Another minor child had a black eye which a sibling attributed to a fall. DCF assigned Defendant Graske to investigate, and he, along with third party Officer Vega, went to the Plaintiffs' home that day.

2. Plaintiff Amanda James-Faulkner, the children's stepmother, denied Mr. Graske and Officer Vega entry into the home without a warrant. Mr. Graske nevertheless was able to interview one of the Plaintiff children elsewhere. The child answered that her parents were treating her rash and that her sibling blackened her eye after accidently falling against a table while playing. When asked whether the home was messy, she answered "sometimes". That same day, December 25th, Officer Vega wrote a separate police report, stating that:

> Due to the nature of the abuse allegations, and lack thereof: the lack of corroborating evidence or statements of abuse, against the alleged victims, and the fact that B. Graske would visit with the alleged victims shortly after speaking with Mrs. Faulkner, no exigent circumstances existed to believe the alleged victims were in danger of being or having been abused.

No criminal investigation was ever commended.

3. The next day, December 26th, Mr. Graske filed an <u>ex parte</u> Petition to Compel Access to Children with the Circuit

Court for St. Lucie County, Florida. The Plaintiffs object to three representations made in the accompanying Affidavit. The Plaintiffs object to how Mr. Graske referenced the rash and the black eye without putting them into context, i.e., no one was alarmed about the rash and the children gave an explanation for the black eye. The Plaintiffs also object to Mr. Graske's description of the home environment as "filthy"; he could not have known the state of the home since he had been denied entry. The Plaintiffs allege that these representations were false and that Mr. Graske knew them to be false.

4.  The Circuit Court granted Mr. Graske's petition. The Court reached three findings: DCF's receipt of an abuse report, the mother's denial of access to the children; and DCF's request for law enforcement accompaniment in order to secure Mr. Graske's access to the children and the home. The Court ordered the children's parents to let Mr. Graske have "access to the children to conduct his investigation, out of the presence of the parents, or parents' agents."

5.  With this Order in hand and accompanied by Officers Carrasquillo and Williams, the two other named Defendants, Mr. Graske returned to the Plaintiffs' home. Presumably in reference to Officer Vega's police report, the Plaintiffs allege that a 9-1-1 dispatcher already had informed Officers Carrasquillo and Williams that a prior investigation had found the allegations

unsubstantiated.

6. The Plaintiffs allege that the home investigation transpired as follows: With additional police presence outside of the home, the Defendants demanded entry. The Plaintiffs protested but agreed to cooperate only within the scope of the Order. The Plaintiffs demanded that their counsel be present for any conversations or interrogations. (Although the Plaintiffs assert having had counsel, they do not allege any attempt to call their counsel at the time.) Defendant Williams grew highly agitated with the Plaintiff mother and her adamant disagreement over the Order's contents, and he implicitly threatened her with arrest by motioning his handcuffs.

7. The mother entered the home to retrieve the children. The Defendants followed her with their weapons drawn and trained on the Plaintiffs, all within the children's view. The Plaintiffs deny creating any situation justifying the Officers' display of force and deny any intimation of uncooperativeness. Still the Plaintiff mother does allege that "in an attempt to stop the invasion of Plaintiffs' privacy, [she] reiterated on at least three occasions that the warrant did not give authority to enter the home". The Plaintiffs allege further the Defendants' acknowledgment that the Order was not a search warrant.

8. The Defendants proceeded with their investigation despite seeing "that the children were in good health and well

cared for" and "that the home was not hazardous." They took the youngest child away from the mother in order to photograph her. Another child was "interrogated" outside the parents' presence and behind closed doors in the bedroom for a significant length of time. The Defendants next searched the whole house, and before leaving, asked the mother to show her driver's license.

     9.    Several days later, on December 29th, Mr. Graske filed a second petition, this time to compel the parents' cooperation with the investigative team. Mr. Graske did so in the absence of any emergency and without giving the parents' legal notice, despite the mother's earlier request for notice of any future court proceedings. A judge entered the Order, and the mother took the child (which one is unspecified) to the investigative team. The team refused to conduct an examination. Mr. Graske then moved for an order to show cause for the Plaintiff's failure to participate in a December 31st interview.

     10.    The next event the Plaintiffs reference is an Order issued on January 14, 2004. The Plaintiffs quote the Judge as ruling:

> In actuality there is no case pending relative to this matter, the case was initially filed by pro se litigants and was subsequently dismissed. Furthermore, it appears that the child in question is not even subject to this case . . . . DCF has never filed a petition in this case. Therefore, the entire issue is moot.

It is not stated whether this Order was a ruling on the motion

for order to show cause, but the Plaintiffs' proffered quote from the ruling suggests that the Order may have been entered in a separate, civil matter.

11. The Plaintiffs conclude that the case, presumably meaning the abuse investigation, "was closed with no indicators of abuse, neglect or abandonment."

12. Through their First Amended Complaint the Plaintiffs raise various constitutional and state law claims. The Plaintiffs' constitutional claims arise from three core issues: warrantless search of the home and seizure of their persons, intrusion into the familial home without due process, and interrogation of the one child away from her parents. To these, the Plaintiffs raise additional claims of search and seizure beyond the scope of the warrant and denial of right to their attorney's presence. The Plaintiffs contend that these actions violated their First, Fourth, Fifth, and Fourteenth Amendment rights.

13. As for their state law claims, the Plaintiffs contend that the investigation's shortcomings, referenced above, did not comply with various requirements of the investigation statute, § 39.301, Fla. Stat. That is, Mr. Graske had insufficient evidence to justify opening the investigation, improperly obtained a court Order, acted beyond the scope of that Order, and failed to accord the parents the protections given them under the statute. The

Plaintiffs also allege violations of § 839.24, Fla. Stat., for the failure to prevent their harassment and of § 787.03, Fla. Stat., for interfering with the parents' custody of their children. Lastly the Plaintiffs contend that the interview of the child under an invalid warrant constituted false imprisonment.

14. The Plaintiffs filed no Response specific to the instant Motions to Dismiss. Instead the Plaintiffs gave notice of reliance on their previously filed Responses to the first round of dismissal motions and on their Objections to this Court's first Report and Recommendation.

## **DISCUSSION**

Ruling on the Defendants' Motions requires analysis under Rule 12(b)(6) for failure to state a claim, a standard which ultimately requires this Court to accept the Plaintiffs' well-pled factual allegations as true and to draw all reasonable inferences in their favor. See Morrison v. Amway Corp., 323 F.3d 920, 924, n.5 (11th Cir. 2003) and Oxford Asset Mgt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). Therefore the Complaint is subject to dismissal if the Plaintiffs can prove no set of facts to support their claims or if the alleged facts fail to state a cognizable theory for relief, see, e.g., Glen v. Club Mediterranee S.A., 365 F.Supp.2d 1263, 1273 (S.D. Fla. 2005); or if the Plaintiffs' allegations present a dispositive legal issue precluding relief such as the affirmative defense of qualified

immunity, see Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001).

In applying the foregoing standard, the Court is confined to the four corners of the Complaint, but it may also refer to documents referenced in the pleading, see Rhodes v. Omega Research, Inc., 38 F.Supp.2d 1353, 1357-58 (S.D. Fla. 1999), or any attachments thereto, see Future Tech Int'l, Inc. v. Tae II Media, Ltd., 944 F.Supp. 1538, 1561 (S.D. Fla. 1996). See also, Oxford, 297 F.3d at 1188. In their First Amended Complaint, the Plaintiffs discuss the contents of the various reports and court filings subject of their claims.

Much of the Plaintiffs' argument depends on the validity of the initial investigation Order and the Defendants' compliance with the requirements and procedures of § 39.301, Fla. Stat. The Plaintiffs do not challenge the propriety of the investigation's initiation, and indeed there is little grounds to raise such a challenge. Section 39.301(1) states that upon a report of "suspected child abuse, abandonment, or neglect," there shall be an onsite protective investigation the timing of which depends on the circumstances. Regardless of the veracity or accuracy of the reported information, the hotline report conveyed sufficiently specific information to justify initiating an investigation. Nor do the Plaintiffs challenge the propriety of the initial contact made by Mr. Graske and Officer Vega.

The statute mandates an onsite protective investigation, even in the absence of maltreatment or recent maltreatment. An onsite protective investigation is to consist of a face-to-face interview of the child and of other household members as well as an onsite assessment of the child's residence. The purpose of the onsite investigation is to look for indications of abuse, abandonment, or neglect and to assess the immediate and long term abuse risk. The statute specifically provides that the investigation is to be carried out unannounced. The statute further provides for an enhanced onsite child investigation for more egregious circumstances, such as allegations involving physical abuse, substance exposure, medical neglect, or a very young child. (The companion statute, § 39.302, Fla. Stat., repeats many of these same requirements.) If, after conducting the initial investigation, DCF sees need for protection, then the next step is for DCF to file a Petition for Dependency.

Should the parents deny DCF reasonable access to the child contrary to the child's best interests, § 39.301(12) permits DCF to seek "an appropriate order . . . prior to examining and interviewing the child." This is what occurred here. The Plaintiffs did not permit Mr. Graske to complete his investigation when he first contacted them. This necessitated Mr. Graske's request for an access order. It is the proffer Mr. Graske gave in support of his petition that the Plaintiffs

primarily contest, a proffer which the Plaintiffs contend was false and misleading. The proffer's shortcomings, the Plaintiffs conclude, rendered the Order invalid.

The Plaintiffs argue that the proffer issue is too fact-intensive to lend itself to resolution on a motion to dismiss. This Court disagrees because the issue does not involve factual disputes but rather the legal sufficiency of the stated facts such as they are. In its prior Report and Recommendation, this Court found that even if the alleged misrepresentations were corrected or removed, the justification for the investigation, and hence the access order, would remain. Regardless of whether Mr. Graske was able to see into the home environment, the hotline caller had described it as messy to the extent that company was discouraged. Regardless of the circumstances of the children's respective medical conditions, the presence of those conditions had been confirmed, and those conditions were of the type that reasonably could be associated with neglect or abuse. Thus the undisputed factual predicate — the abuse report's contents, the events of the initial contact attempt, and the parent's denial of access — still conveyed a legally sufficient basis under the statute's prerequisites to proceed with the initial investigation. That Officer Vega opened no criminal investigation has no legal bearing since § 39.301, Fla. Stat., contemplates law enforcement proceedings separate and apart from DCF's risk

assessment mandate. Also noteworthy is the fact that Officer Vega's report was premised, in part, on Mr. Graske's anticipated access to the family. In the end analysis, however, the statute still compelled both a home inspection and interview of household members before that investigation could be completed. This alone justified the access order.

The access order gave the Defendants authority to enter the Plaintiff's home. The Plaintiffs claim alternatively that in carrying out the investigation, the Defendants exceeded the permissible scope of the access order. This argument fails because the plain language of the access order did permit the investigatory activities that occurred, namely, the search of the home and the interview of the child. Indeed the governing statute, itself, compels these very actions, and any detention was purely incidental to the investigation. The other facet of the Plaintiffs' argument is that the law enforcement officers used excessive force, namely, implicitly threatening the mother with arrest, brandishing sidearms, and doing so within the children's view. Although the Plaintiffs make the conclusory assertion that they did nothing to justify the display of force, they also make clear that they repeatedly protested the home entry. Thus there was at least some apparent need for a demonstration of authority.

The fact that the Defendants acted under § 39.301, Fla.

Stat., with the additional authority of the access order, bears on the Plaintiffs' due process arguments, as well. The Plaintiffs contend that their familial liberty interests were unduly infringed, but as this Court discussed in its prior Report and Recommendation, the right to familial integrity is not absolute. It must be balanced against the State's interests in child welfare. Thus, in order to "prevail on a claim about family privacy, parents need to prove that a state actor interfered with a protected liberty interest without sufficient justification." Foy v. Holston, 94 F.3d 1528, 1536 (11th Cir. 1996). Here the Defendants were exercising the State's interests and followed the statutory procedures for doing so. It must also be remembered that the Defendants were conducting an initial investigation, not a removal or even a criminal investigation, and the Plaintiffs cite no legal authority suggesting that § 39.301, Fla. Stat., presents an unjustified intrusion into family oriented liberty rights.

The Plaintiffs raise two additional constitutional arguments. First they contend that they were deprived of the right to counsel, but they cite no legal authority that a constitutional right to counsel arose under these circumstances. They say that under § 39.301(5)(a), Fla. Stat., they must be informed of their "right to obtain [their] own attorney", but nothing of the statute stays the initial investigation until such

time as counsel is present. Indeed the statute's provision for an unannounced investigation would directly contradict any such requirement. And in a more practical sense, the Plaintiffs allege no actual deprivation of access to counsel; the Plaintiffs do not allege that the Defendants thwarted any attempt to call counsel. The Plaintiffs remaining constitutional argument is that the interrogation of the child outside her parents' presence violated the child's First Amendment rights, but without any apparent indication of exactly how so.

The foregoing establishes how the Plaintiffs fail to state a violation of § 39.301, Fla. Stat. Since the Defendants' actions instead comport with the governing statute, all of the Plaintiffs' various claims arising under state law must fail. The Plaintiffs fail to state as a matter of law on these facts any violation of their constitutional rights. And lastly nor do the events coming after the initial investigation state any statutory or constitutional violations. The fact that no abuse or neglect ultimately was found does not render the initial investigation, which led to that finding, improper. Of course, the Defendants do not move for dismissal for failure to state a claim for relief per se but rather on the basis of qualified immunity. See <u>Al-Amin v. Smith</u>, 511 F.3d 1317, 1324 (11th Cir. 2008) (setting forth the two part test for qualified immunity). However the two standards intertwine here so that the foregoing likewise establishes the

first prong of the qualified immunity analysis. As for the analysis' second prong, the Plaintiffs do not come forward to demonstrate what clearly established right the Defendants violated.

This Court discussed the qualified immunity analysis in greater depth in its prior Report and Recommendation, and the Plaintiffs' present allegations do not direct a different conclusion now. Therefore this Court finds the Defendants entitled to qualified immunity and immune from suit on all counts.

**ACCORDINGLY,** this Court recommends to the District Court that the Defendants' Motions to Dismiss be **GRANTED.** Since this Court does not anticipate that a more carefully drafted complaint might better state the claims, the claims should be dismissed with prejudice and without leave to amend. Cf. Silvia v. Bieluch, 351 F.3d 1045, 1048-49 (11th Cir. 2003).

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 13rd day of June, 2008.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jose E. Martinez
    Phillip E. Kuhn, Esq.
    Allen C. Sang, Esq.
    William E. Calnan, Esq.