UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Fort Pierce Division
**Case Number:07-14317-CIV-MARTINEZ-LYNCH**

CHRISTOPHER S. FAULKNER, AMANDA
M. JAMES-FAULKNER; CHLOE A. JAMES-
FAULKNER, a minor and NAYA C. JAMES-
FAULKNER, a minor, By and through
CHRISTOPHER S. FAULKNER, and
AMANDA M. JAMES-FAULKNER, the
natural parents and next of friends,
    Plaintiffs,

vs.

BRAD GRASKE, LISA CARRASQUILLO,
and FRED WILLIAMS,
    Defendants.
_____/

## ORDER ADOPTING IN PART MAGISTRATE JUDGE LYNCH'S REPORT AND RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

    Plaintiffs, Christopher S. Faulkner, Amanda M. James-Faulkner, and minors Chloe A. James-Faulkner and Naya C. James-Faulkner, by and through Christopher S. Faulkner and Amanda M. James-Faulkner, as their natural parents and next friends ("Plaintiffs" or "Faulkners") have alleged a violation of 42 U.S.C. § 1983, listing a number of constitutional violations, and several state law violations arising from the actions of Defendants Brad Graske ("Defendant" or "Graske"), a Department of Children and Family Services ("DCF") employee, Lisa Carrasquillo ("Defendant" or "Carrasquillo"), a Port St. Lucie police officer, and Fred Williams ("Defendant" or "Williams"), a Port St. Lucie police officer, during their investigation of an anonymous tip on a child abuse hotline. This matter was referred to the Honorable Frank J. Lynch, Jr, United States Magistrate Judge, for a Report and Recommendation on Defendants,

Lisa Carrasquillo and Fred Williams' Motion to Dismiss Amended Complaint (D.E. No. 46) and Defendants' Motions to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b) (D.E. No. 47).  Magistrate Judge Lynch filed a Report and Recommendation (D.E. No. 52), finding that the Defendant officers are entitled to qualified immunity and recommending the dismissal of this action with prejudice.  Plaintiffs have filed objections (D.E. No. 55) to Magistrate Judge Lynch's Report and Recommendation. The Court has made a *de novo* review of the issues, and after careful consideration, the Court adopts Magistrate Judge Lynch's Report and Recommendation in part and grants in part and denies in part Defendants' motions to dismiss.

## I. Relevant Factual and Procedural Background

Magistrate Judge Lynch previously filed a Report and Recommendation on Defendants' first motions to dismiss Plaintiffs' complaint.  *See* (D.E. No. 29).  In this Report and Recommendation, Magistrate Judge Lynch also recommended that Plaintiffs' complaint be dismissed, finding Defendants were entitled to qualified immunity.  Magistrate Judge Lynch recommended that the dismissal be without prejudice to amend in case Plaintiffs were better able to state their claims. This Court adopted in part Magistrate Judge Lynch's Report and Recommendation and dismissed Plaintiffs' complaint without prejudice.  In dismissing the complaint, this Court did not reach Magistrate Judge Lynch's recommendation that the complaint be dismissed on qualified immunity grounds as it found that Plaintiffs had failed to meet Federal Rule of Civil Procedure 8(a)'s requirement that a complaint contain a "short plain statement of the claim showing that the pleader is entitled to relief."  (D.E. No. 44 at 1).  The Court found that "Plaintiffs' Complaint . . . [was] a confusing jumble of citations to numerous statutes and constitutional amendments without explanation of why each statute or amendment was allegedly

violated and without any indication as to which of the Defendants . . . [were] responsible for which violations." *Id*. at 2.  The Court gave Plaintiffs the opportunity to file an amended complaint, which they have now done.  *See* (D.E. No. 45).  It is this amended complaint, which Defendants have now moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and which Magistrate Judge Lynch has now recommended that this Court dismiss with prejudice.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is confined to the four corners of the complaint and must accept Plaintiffs' allegations as true.  Thus, the facts, as stated below, are taken directly from the amended complaint.

In the amended complaint, Plaintiffs have alleged that on or about December 25, 2003, DCF received an anonymous tip from the Florida Child Abuse Hotline that a minor, Jasmine Faulkner ("Jasmine"), had a rash on her buttocks, that a minor, Naya James-Faulkner ("Naya"), had a black eye, and that the home these children lived in was messy.  (D.E. No. 45 at ¶ 12).  The anonymous tipster also related that Naya sustained the black eye when she accidentally fell while playing with her sisters.  *Id*. at ¶ 23.  Defendant Graske, an employee of DCF, was assigned to investigate this tip.  *Id*. at ¶ 13.

On the same day that the tip was received, Defendant Graske and non-party Port St. Lucie police officer, Jason Vega, went to the Plaintiffs' home in Port St. Lucie, Florida.  *Id*. at ¶ 15. Plaintiff Amanda M. James-Faulkner ("Amanda"), the stepmother of Jasmine and mother of Naya and Chloe James-Faulkner ("Chloe"), refused to allow them to enter the home and "advised them they needed a legitimate warrant and without a warrant that she would not consent for them to enter her home." *Id*. at ¶ 16.  However, later that same day, Defendant Graske was able to

interview Jasmine at the home of Sara Barker, Jasmine's mother. *Id*. at ¶ 17. Plaintiffs state that Jasmine told Graske that "she . . . had a rash that was being treated by her parents." *Id*. at ¶ 18. However, Plaintiffs state that "[a]t no time was there any indication that the child was denied medical treatment or that the rash was caused by the Plaintiff parents." *Id*. Jasmine also told Graske that Naya had sustained a black eye when she accidentally fell against a table while she was playing. *Id*. at ¶ 19. Plaintiffs state that when asked whether her home was messy she said "'sometimes.'" *Id*.

After this interview, Officer Vega filed a report with the Port St. Lucie Police Department. Plaintiffs allege this report stated that "'[d]ue to the nature of the abuse allegation, and lack thereof: the lack of corroborating evidence or statements of abuse, against the alleged victims, and the fact that B. Graske would visit with the alleged victims shortly after speaking with Mrs. Faulkner, no exigent circumstances existed to believe the alleged victims were in danger of being or having been abused.'" *Id*. at ¶ 20.

On December 26, 2003, Graske filed an affidavit in support of a "'Petition to Compel Access to children'" with the Circuit Court in St. Lucie County, Florida. *Id*. at ¶ 21. Plaintiffs allege that Defendant Graske's affidavit was deliberately false and misleading. *Id*. at ¶¶ 27-30.

Plaintiffs allege that Graske stated in the affidavit that Jasmine had a rash but "Graske did not indicate to the court that he had interviewed both Jasmine and her mother, Sara Barker (now a nurse), neither of which expressed concern about the rash. Nor does it appear that Graske was concerned about the rash, in that he did not have the child seek medical attention after his interview with her, although having the ability to do so." *Id*. at ¶ 22. He also related that Naya had a black eye but "did not tell the court that both the hotline report narrative and the sibling,

Jasmine, stated that Naya had a black eye from playing with her sisters, wherein she tripped and fell." *Id*. at ¶ 23.  Finally, Graske also stated that "'[there are] hazardous conditions in the home to wit: the home is filthy.'" *Id*. at ¶ 24.  However, Plaintiffs allege that Defendant Graske was never given access to the home and did not personally witness the living conditions. *Id*.

The Circuit Court of St. Lucie County, Florida granted the Petition to Compel Access to Children *ex parte* and issued an order on December 26, 2003. *Id*. at ¶ 32.  On the same day the order was issued, Graske took this order and along with two armed uniformed Port St. Lucie police officers, Defendants Carrasquillo and Williams, proceeded to the Plaintiffs' home. *Id*. at ¶ 33.  When Graske appeared at the home Plaintiffs allege that he was accompanied by "numerous police officers" and demanded entry. *Id*. at ¶ 35.  Plaintiffs again denied access to the home but agreed to cooperate with their conception[1] of the scope of the order. *Id*.  Plaintiffs also informed Defendants that the children were represented by counsel and counsel wished to be present during any conversations. *Id*. at ¶ 36.

Plaintiffs allege that Defendant Williams became agitated when the mother, Amanda, would not allow him to enter the home and "[a]fter some time, he moved his hand to his handcuffs and commented that he was done arguing; leaving the mother to believe that he was going to place her under arrest if she attempted to stop them from entering the house." *Id*. at ¶¶ 37-38.  "As a result . . . [Amanda] turned around and went into the house to retrieve the children." *Id*. at ¶ 38.  However, Plaintiffs allege that when Amanda turned around Defendants "forcibly entered the home with service weapons drawn and pointing in the direction of the

---

[1]Plaintiffs allege that Defendants did not possess a search warrant and that the Order at issue did not give Defendants the authority to enter the home, to search the home, or to seize anyone. *Id*. at ¶¶ 32, 33, & 41.

Plaintiffs.  Each child was in the direct line sight of each person entering the home with weapons drawn."  *Id*. at ¶ 40.

Defendant Williams "held the adult Plaintiffs in their living room under threat of violence . . . with his service revolver drawn" and Defendants Graske and Carrasquillo took one of the minor children, Chloe, into a bedroom and questioned her.  *Id*. at ¶ 44.  Defendants then searched the entire house.  Plaintiffs state that "Defendants found no evidence of abuse."  *Id*. at ¶ 46.

On December 29, 2003, Defendant Graske filed an affidavit and petition to compel cooperation by the Plaintiffs with the child protection team.  *Id*. at ¶ 48.  The court granted this petition and Plaintiffs allege that Defendants took "the child[2] to the child protection team who refused to conduct the examination."  *Id*. at ¶ 50.  Defendant Graske then filed a motion for an order to show cause based on Plaintiffs' failure to participate in an unspecified interview on December 31, 2003.  *Id*. at ¶ 51.  On January 14, 2004, Judge Scott Kenny found there was no case pending on this matter and Plaintiffs state that the "case was closed with no indicators of abuse, neglect or abandonment."  *Id*. at ¶¶ 52-53.

Plaintiffs' amended complaint contains eleven counts.[3]  In Counts One through Four Plaintiffs have pleaded constitutional violations as the basis of their section 1983 claims.  Plaintiffs have also alleged six state law claims based on violations of various Florida statutes, including sections 39.301(12),[4] 39.01, 839.24, 787.03, 787.02, 810.08(2)(e) and 39.301(5)(a).

---

[2]It is unclear to which child Plaintiff is referring.

[3]Plaintiffs have misnumbered the counts and the complaint contains two claims labeled count ten.  The second "Count X" shall be treated as Count Eleven.

[4]In the title of this count, Plaintiffs reference section 39.301(2); however, in the actual count Plaintiffs reference only subsection 12.

The Court now considers Defendants' motions to dismiss this amended complaint, Magistrate Judge Lynch's Report and Recommendation and the objections thereto.

## II. Analysis

Defendants move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Pursuant to Rule 12(b)(6), when reviewing a complaint the court accepts all well-pleaded allegations as true and views the motion in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, the Eleventh Circuit requires a heightened pleading standard on section 1983 claims where a defendant is capable of asserting a qualified immunity defense. *See Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004); *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998). In a suit that implicates qualified immunity, a plaintiff must "allege with some specificity the facts which make out his claim." *GJR Invs., Inc.*, 132 F. 3d at 1367. In addition, "[a] complaint is also subject to dismissal under Rule 12(b)(6) when its allegations-on their face-show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County, Ala.*, 268 F. 3d 1014, 1022 (11th Cir. 2001).

Defendants have sought to dismiss Plaintiffs' amended complaint, arguing that they are entitled to qualified immunity on Plaintiffs' section 1983 claims and that the state law claims should be dismissed because the statutes on which they are based do not create a private right of

action.[5]  After careful consideration, the Court adopts Magistrate Judge Lynch's Report and Recommendation in part and dismisses with prejudice certain counts of the amended complaint. The Court dismisses Counts Two and Three, finding Plaintiffs have failed to allege the violation of a federally protected right and Counts Five, Six, Seven, Eight, Nine, Ten, and Eleven as they are based on state statutes that do not contain a private right of action.  Counts One and Four remain pending in this action.

      A.      **Section 1983 Claims: Counts One, Two, Three, and Four**

Plaintiffs have listed in Counts One through Four violations of four constitutional amendments, including the First Amendment, the Fifth Amendment, the Fourth Amendment, and the Fourteenth Amendment as grounds for their section 1983 claims.  Defendants argue that these claims are barred by the affirmative defense of qualified immunity.  "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss[,] . . . [and] [t]he motion to dismiss will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" *St. George v. Pinellas County*, 285 F. 3d 1334, 1337 (11th Cir. 2002) (quoting *Chesser v. Sparks*, 248 F. 3d 1117, 1121 (11th Cir. 2001)).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F. 3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In

---

[5]Defendants raised other arguments relating to their state law claims, which this Court finds unnecessary to discuss.

order to receive qualified immunity, Defendants must first demonstrate that they were acting within their discretionary authority. *Al-Amin v. Smith*, 511 F. 3d 1317, 1324 (11th Cir. 2008). Here, there is no dispute that all three defendants were acting within their discretionary authority on December 26, 2008.

Once Defendants establish that they were acting within their discretionary authority, the Court must first determine whether "the plaintiff's allegations, if true, establish a constitutional violation." *Id*. "If a constitutional right would have been violated under the plaintiff's version of the facts, the next question is whether the constitutional right was clearly established." *Id*. In evaluating whether the law was clearly established, "the salient question . . . is whether the state of the law . . . [at the time of the violation] gave respondents fair warning that their alleged treatment . . . [of the Plaintiffs] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Court finds that Plaintiffs have failed to plead violations of the First and Fifth Amendment and thus, these claims in Count Two and Three shall be dismissed. However, the Court finds that Plaintiffs have stated claims for clearly established constitutional violations in Counts One and Four, and the affirmative defense of qualified immunity is not apparent from the face of the complaint as to these two claims.

In Count Two, Plaintiffs allege a violation of the parents' and Chloe's First Amendment rights when Defendants separated them from Chloe and took Chloe in the other room and questioned her on December 26, 2003. The Court agrees with Magistrate Judge Lynch that it is unclear how this is a First Amendment violation. Plaintiffs have not plead any facts which would put Defendants on notice as to the nature of their First Amendment claim. Moreover, in their objections, Plaintiffs did not respond to Magistrate Judge Lynch's finding that this claim

should be dismissed, offering no objections to the dismissal of this count.  Thus, the Court finds Plaintiffs have failed to state a First Amendment violation and the Court dismisses Count Two. Moreover, the Court dismisses Count Two with prejudice especially as Plaintiffs have already been given one opportunity to file an amended complaint and have previously been reminded of the need to clarify their allegations.  *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 315 F. 3d 541, 542 (11th Cir. 2002) (stating that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

In Count Three, Plaintiffs allege that the entry, search, and questioning of the minor children without their attorney, violated Plaintiffs' substantive and procedural due process rights under the Fifth Amendment.  However, "[t]he Fifth Amendment is applicable to the actions of federal, not state government." *Johnson v. Cannon*, 947 F. Supp. 1567, 1572 (M.D. Fla. 1996). Thus, in this case, where Plaintiffs have only alleged that Defendants were acting under color of state law, Plaintiffs cannot state a Fifth Amendment violation.  Therefore, the Court dismisses Count Three with prejudice.[6]

In Count One and Count Four respectively, Plaintiffs allege violations of the Fourth and Fourteenth Amendment. These violations relate to Defendants entry and search of the home on December 26, 2003 and their questioning of Chloe in a different room.  Here, the Court disagrees

---

[6]Plaintiffs appear to make claims that the children were denied their right to have counsel present when they were questioned by the officers regarding possible abuse.  To the extent Plaintiffs are attempting to assert a Sixth Amendment violation, the Court finds it is not well-taken. *Johnson v. Cannon*, 947 F. Supp. 1567, 1572 (M.D. Fla. 1996) (stating that "[u]nder the modern system of law enforcement and public prosecution, the 'criminal prosecution' to which the Sixth Amendment refers begins when formal charges are filed.").  The Court also notes that the children in this case do not appear to have ever been accused of any criminal conduct.

with Magistrate Judge Lynch's recommendation that Defendants should be granted qualified immunity on the face of Plaintiffs' Complaint.

As the facts are alleged in this case, an anonymous tip was received that alleged that one of the Plaintiffs' children had a rash, that another child had a black eye she sustained when she tripped and fell while playing with her sisters, and that the home the children lived in was messy. These facts were confirmed by one of the children, and she added that her rash was being treated by her parents and that the house was only messy sometimes. Then, as alleged, by Plaintiffs, Defendant Graske sought an order from the Court to gain access to the children which as Plaintiffs have alleged was both intentionally misleading and false. According to Plaintiffs' amended complaint, Graske left out the important detail that the anonymous tipster and Jasmine had both stated that Naya sustained the black eye accidentally when she fell while playing with her sisters and he falsely stated in the affidavit that the conditions in the home were "hazardous" and that the home was "filthy" despite never actually having been inside the home. This Order was then used as a basis for Graske and two police officers to enter Plaintiffs' home without their consent, even though the mother was in the process of going to get the children to bring them outside for Defendants to question them. Defendants then searched the entire home, and questioned the children, forcibly separating at least Chloe from her parents and taking her into another room to be questioned.

Taking these allegations as true, as the Court is required to do at this stage in the litigation, Plaintiffs have alleged Fourth and Fourteenth Amendment violations and these violations are clearly established. "It is a fundamental rule of Fourth Amendment law that warrantless searches and seizures inside a home are presumptively unreasonable." *Bates v.*

*Harvey*, 518 F. 3d 1233, 1243 (11th Cir. 2008). In addition, "parents have a constitutionally protected liberty interest in the care, custody and management of their children." *Doe v. Kearney*, 329 F. 3d 1286, 1293 (11th Cir. 2003). Because of this liberty interest, protected by the Fourteenth Amendment, parents must be afforded due process before being deprived of "the care custody and management of their children." *Id*.

The Order on Motion to Require Access to the Children (D.E. No. 47, Exh. A)[7] is not a search warrant and it does not state that Defendants have the authority to enter Plaintiffs' home or to search it. The Order states only that "[t]he parents, Amanda James and Chris Faulkner, shall allow the Protective Investigator, Brad Graske, access to the children to conduct his investigation, out of the presence of the parents or parents['] agents." (D.E. No. 47, Exh. A at 2). While this Order gave Defendants the right to question the children, including Chloe outside of the presence of the parents, it is not clear that they had the right to enter and search the home. Thus, the Court cannot say that Plaintiffs have not sufficiently alleged a Fourth Amendment violation.

Moreover, according to Plaintiffs' allegations, this Order was secured based upon intentional misstatements by Graske to the court. Thus, the Court also cannot say that Plaintiffs have not sufficiently alleged a Fourteenth Amendment violation. Finally, while both the Fourth and Fourteenth Amendment provide an exception to their protections where there are exigent

---

[7]Defendants have filed the actual order issued by the Court on the record. *See* (D.E. No. 47, Exh. A). The Court notes that while this Order is outside of the four-corners of the Amended Complaint as it is reference in the amended complaint, the Court is entitled to consider it when ruling on Defendants' motions to dismiss. *See Rhodes v. Omega Research, Inc.*, 38 F. Supp. 2d 1353, 1357-58 (S.D. Fla. 1999) (stating that "[o]n a motion to dismiss, the Court may consider documents attached to the complaint or directly referenced in the complaint.").

circumstances, *Doe*, 329 F. 3d at 1293-4, 1299, the Court also cannot find based solely upon the allegations in the amended complaint that exigent circumstances existed in this case as it is not clear that the children were in imminent danger. *Croft v. Westmoreland County Children and Youth Servs.*, 103 F. 3d 1123, 1126 (3d Cir. 1997) (stating that "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse.").

The Court also finds that the Fourth and Fourteenth Amendment rights are clearly established. However, the decision on whether a right is clearly established is highly dependent upon the facts in the case. In this case, both Plaintiffs and Defendants make numerous references to evidence and documents that are not in the record and not yet before this Court as the Court considers only motions to dismiss at this stage of the litigation. The Court's decision on a motion for summary judgment regarding this issue may in fact be very different. Thus, the Court denies Defendants' motions to dismiss Counts One and Four.

      **B.**      **State Law Claims: Counts Five, Six, Seven, Eight, Nine, Ten and Eleven**

Plaintiffs have also alleged state law violations in Counts Five, Six, Seven, Eight, Nine, Ten and Eleven. However, the Court finds that these counts are based upon violations of statutes that do not establish private rights of action. Thus, the Court dismisses these counts with prejudice.

Counts Five and Nine reference violations of section 39.301 of the Florida statutes, a statute which provides procedures for initiation of protective investigations. Count Six references a violation of section 39.01, the definition section for Chapter 39 of the Florida

Statutes which is titled "Proceedings Relating to Children." Finally, Counts Seven, Eight, Nine, and Ten are criminal statutes which provide only for criminal penalties.[8] Upon examination of all of these statutes, their plain language does not provide for a private right of action. *Horowitz v. Plantation General Hosp. Ltd. P'ship*, 959 So. 2d 176, 182 (Fla. 2007) (noting that under Florida law when determining whether a statute confers a private right of action a court must look at the legislative intent and that the primary guide to determining legislative intent is the plain language of the statute). *See also Figueroa v. Clark*, 810 F. Supp. 613, 615 (E.D. Pa. 1992) (finding that a plaintiff could not bring a private civil lawsuit based upon statutes which establish criminal liability); *Mantooth v. Richards*, 557 So. 2d 646, 646 (Fla. 4th DCA 1990) (providing that a Florida criminal statute did not afford a civil remedy). Thus, the Court dismisses these counts with prejudice. Accordingly, it is hereby:

**ORDERED and ADJUDGED** that

1.     United States Magistrate Judge Lynch's Report and Recommendation **(D.E. No. 52)** is **AFFIRMED** and **ADOPTED in part**.

2.     Defendants' motions to dismiss (D.E. Nos. 46 & 47) are **GRANTED in part** and **DENIED in part**. The motions are granted in that Counts Two, Three, Five, Six, Seven, Eight, Nine, Ten, and Eleven are **Dismissed with prejudice**. The motion is denied in all other respects,

---

[8]Even if this Court were to construe these counts as tort violations, which is unnecessary as Plaintiffs are represented by counsel and perfectly capable of asserting the appropriate causes of action, these counts would be barred by section 768.28(9)(a) of the Florida Statutes. Section 768.28(9)(a) bars tort actions against state officers and employees in their individual capacity "unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Here, Plaintiffs have made no allegations that the state employees were acting in bad faith. On the contrary, in this case there has been no dispute that Defendants were acting within their discretionary authority.

and Counts One and Four remain pending.

3.	Defendants shall file an Answer to the remaining counts in Plaintiffs' Amended Complaint on or before **August 22, 2008**.

4.	Defendants, Lisa Carrasquillo and Fred Williams' Motion to Extend Deadlines **(D.E. No. 64)** is **DENIED** as **MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 15 day of August, 2008.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record