UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division
Case Number:  07-14317-CIV-MARTINEZ-LYNCH

CHRISTOPHER S. FAULKNER, AMANDA
M. JAMES-FAULKNER; CHLOE A. JAMES-
FAULKNER, a minor and NAYA C. JAMES-
FAULKNER, a minor, By and through
CHRISTOPHER S. FAULKNER, and
AMANDA M. JAMES-FAULKNER, the
natural parents and next of friends,
    Plaintiffs,

vs.

BRAD GRASKE, LISA CARRASQUILLO,
and FRED WILLIAMS,
    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants, Lisa Carrasquillo and Fred Williams' Motion for Summary Judgment (D.E. No. 70) and Defendant's Motion for Summary Judgment (D.E. No. 73).  Plaintiffs, Christopher S. Faulkner, Amanda M. James-Faulkner, and minors Chloe A. James-Faulkner ("Chloe") and Naya C. James-Faulkner ("Naya"), by and through Christopher S. Faulkner and Amanda M. James-Faulkner, as their natural parents and next friends, have alleged a violation of 42 U.S.C. § 1983 arising from the actions of Defendants Brad Graske ("Defendant" or "Mr. Graske"), a Department of Children and Family Services ("DCF") employee, Lisa Carrasquillo ("Defendant " or "Officer Carrasquillo"), a Port St. Lucie police officer, and Fred Williams ("Defendant" or "Officer Williams"), a Port St. Lucie police officer, during their investigation of an anonymous tip on a child abuse hotline. After careful consideration, the Court grants Defendants' motions for summary judgment.

## I.  Relevant Factual and Procedural Background

On December 25, 2003, the Florida Abuse Hot Line received an anonymous call alleging that Plaintiff Amanda James-Faulkner ("Mrs. James-Faulkner") abused two of her minor children, Jasmine Faulkner[1] ("Jasmine") and Naya. (D.E. No. 89, Joint Stipulation at 7). The Florida Abuse Hot Line accepted the call for investigation and prepared an abuse report. *Id*. The abuse report contained the following narrative:

> Jasmine age 7, indicates that her stepmother stays up late at night, drinks and gets drunk.  On 12/24 Stepmother was observed with reddened eyes, dirty clothes and dirty feet.  Stepmother is treating Jasmine's backside with neosporin because Jasmine has developed a rash that Step Mom [sic] identifies as impetigo.  The home is so messy that noneof [sic] the children is permitted to bring friends there.  The specific conditions inside thehomeare [sic] unknown.  Jasmine has been warned not to mention her rash to anyone and became fearful when she was bathing, that an adult came in and saw the rash.  She indicated that she "would get in trouble for showing anyone the rash." On 12/24 Naya age 2. [sic] stepsisterto [sic] Jasmine, was  observed with a black eye.  According to Jasmine, Naya . . . [fell].  No prior marks have been observed on Naya.  Parents have not been questioned how the bruising to the child's eye occurred.  Immeo, [sic]

*Id*.[2]  This abuse report was referred to DCF and specifically assigned to Mr. Graske. *Id*.

On the same day that the tip was received, Mr. Graske and non-party Port St. Lucie police officer, Jason Vega ("Officer Vega"), went to the Plaintiffs' home in Port St. Lucie, Florida. *Id*. at 2, 4, 5. Mrs. James-Faulkner would not allow Mr. Graske or Officer Vega access to the home or her children without a court order. *Id*. *See also* (D.E. No. 70-5, Graske Depo. at 22-23).

Mr. Graske and Officer Vega next went to the home of Jasmine's biological mother, Sara

---

[1]Jasmine is not a party to this action.  Mr. Faulkner is her biological father and Mrs. James-Faulkner is her stepmother.  (D.E. No. 70-6, Mrs. James-Faulkner Depo. at 4).

[2]The narrative as written in the parties' Joint Stipulation appears in all capitals. A redacted version, redacting all of the names and also without the typographical errors noted above, is located in the record at docket entry number 73-2, Exhibit A.

Barker ("Mrs. Barker").  (D.E. No. 89, Joint Stipulation at 2, 4, 5).  Mrs. Barker allowed Mr. Graske and Officer Vega to interview Jasmine.  *Id*. at 2, 4. Jasmine confirmed that she had a rash and that her mother was treating it with "some kind of Neosporin or some medication."  (D.E. No. 70-5, Graske Depo. at 27).  She also testified that Naya "had a bruise on her eye and that she hit a table."*Id*.[3]  When asked whether the Faulkner house was clean, Jasmine indicated that it was not.  *Id*. at 27, 29.

On the next day, December 26, 2003, DCF filed an Affidavit and Petition for Access to Examine and Interview Children in the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida.  (D.E. No. 89, Joint Stipulation at 8).  *See also* (D.E. No. 70-2).  This affidavit was signed by Mr. Graske.  (D.E. No. 89, Joint Stipulation at 8).  On that same day, the Court granted DCF's petition and entered its Order on Motion to Require Access to the Children. (D.E. No. 70-3).  Mr. Graske then took this order and returned to the Faulkner home along with two Port St. Lucie police officers, Defendant Officers, Carrasquillo and Williams.  (D.E. No. 89, Joint Stipulation at 2, 4, 5).

The parties disagree as to what exactly occurred at the home.[4]  As the Court is considering Defendants' motions for summary judgment, the Court recites the following facts in the light most favorable to Plaintiffs.  When Mr. Graske, Officer Carrasquillo, and Officer Williams arrived at the Faulkner home, Plaintiff Mrs. James-Faulkner again refused to allow

---

[3]Vega filed a report with the Port St. Lucie Sheriffs Department stating that no exigent circumstances existed to indicate the children were in immediate danger, especially as Graske would shortly thereafter visit with the alleged victim.  *See* (D.E. No. 70-5, Graske Depo. at 57).

[4]For example, Mr. Graske testified that the Faulkners allowed them to enter the home and question the children.  (D.E. No. 70-5, Graske Depo. at 44, 47).  He also testified that neither officer drew their guns.  *Id*. at 44-45.

them to enter the home and did not give them access to her children. (D.E. No. 70-6, Amanda James-Faulkner Depo. at 72). Mrs. James-Faulkner testified that she did not give Defendants access because she was waiting for her attorney to arrive at her home. *Id*. However, at some point, Mrs. James-Faulkner became fearful that she was going to be arrested, and thus, she decided to go in and bring the children out to Defendants. *Id*. at 82. When she opened the door to go back inside the house to get the children she testified that Defendants "came in behind" her. *Id*. Plaintiff Christopher Faulkner ("Mr. Faulkner"), Mrs. James-Faulkner's husband and father of Jasmine, Naya, and Chloe, was inside the house and testified that he saw one of the officers push the door open with his or her arm. (D.E. No. 70-7, Mr. Faulkner Depo. at 16-18). Mr. Faulkner also testified that one of the officers entered the house with his or her gun drawn.[5] *Id*. at 16-17. Plaintiffs owned pit bulls, and Mrs. James-Faulkner conveyed to the officers as they entered the house that she "couldn't guarantee that they couldn't get out." (D.E. No. 70-6, Mrs. James-Faulkner Depo. at 84). She also testified that she saw the officers place their hands on their holsters in response to the barking dogs. *Id*. at 83.

The children were then questioned by Defendants. (D.E. No. 70-7, Mr. Faulkner Depo. at 20). Mr. Faulkner testified that all three children were separated from him and Mrs. James-Faulkner and then taken into a bedroom and questioned. *Id*. at 20. Defendants then walked through the house and opened drawers. *Id*. at 20-21; (D.E. No. 70-6, Mrs. James-Faulkner Depo. at 89-90).[6] After concluding their investigation, the officers left. DCF eventually closed the

---

[5]Mr. Faulkner does not know which officer had his or her gun drawn. (D.E. No. 70-7, Mr. Faulkner Depo. at 17).

[6]The only drawers Mrs. James-Faulkner saw Defendants open were those in the kitchen. (D.E. No. 70-6, Mrs. James-Faulkner Depo. at 89). Mrs. James-Faulkner did testify that she

investigation without finding any indicators of abuse.  (D.E. No. 89, Joint Stipulation at 7).

On October 17, 2007, Plaintiffs filed suit against Defendants, alleging a number of claims.  Defendants filed a motion to dismiss Plaintiffs' Complaint.  The Honorable Frank J. Lynch, Jr., United States Magistrate Judge, filed a Report and Recommendation (D.E. No. 29) on these motions, recognizing that the Complaint did not set forth "clear, discrete claims for relief" and recommending that the motions to dismiss be granted as he found that Defendants were entitled to qualified immunity.  The Court adopted the Report and Recommendation in part, finding that the Complaint was "a confusing jumble of citations to numerous statutes and constitutional amendments without explanation of why each statute or amendment was allegedly violated and without any indication as to which of the Defendants . . . [were] responsible for which violations."  (D.E. No. 44 at 1-2).  Thus, Plaintiffs' complaint was dismissed without prejudice and Plaintiffs were given the opportunity to file an Amended Complaint.  *Id*. at 2.  The Court declined to reach the issue of qualified immunity.

On May 6, 2008, Plaintiffs filed their eleven-count[7] First Amended Complaint (D.E. No. 45).  Defendants again moved to dismiss this complaint.  Magistrate Judge Lynch filed a Report and Recommendation (D.E. No. 52), finding again that the Defendant officers were entitled to qualified immunity and recommending the dismissal of this action without prejudice.  This Court adopted Magistrate Judge Lynch's Report and Recommendation in part and granted in part and

---

heard them opening other drawers, and she testified that she believes they opened her bathroom cabinets because one of the child safety latches was later found broken on one of these cabinets. *Id*. at 89-90.

[7]Plaintiffs misnumbered the counts in the First Amended Complaint.  This complaint contains two claims labeled "Count X."  Thus, the second "Count X" was treated as Count Eleven.

denied in part Defendants' motions to dismiss. *See* (D.E. No. 65). This Court dismissed all but two counts of Plaintiffs' First Amended Complaint. The Court found that Plaintiffs failed to allege section 1983 claims in Counts Two and Three as they failed to allege a violation of a federally protected right. The Court also found that Plaintiffs' claims in Counts Five, Six, Seven, Eight, Nine, Ten, and Eleven failed to state a cause of action as they were based on state statutes that do not contain a private right of action.

Counts One and Four remain pending in this action. In Counts One and Four respectively, Plaintiffs allege violations of the Fourth and Fourteenth Amendment as the basis of their section 1983 claims. These violations relate to Defendants entry and search of the home on December 26, 2003 and their questioning of Chloe in a different room. The Court declined to grant qualified immunity to Defendants on their motions to dismiss but noted that a decision on this issue on a motion for summary judgment could "in fact be very different." *Id*. at 13. All Defendants have now moved for summary judgment.

## II. Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). An

issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S. at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id*. at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc*., 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the

opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 324. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. Analysis

Defendants, sued in their individual capacity, have filed motions for summary judgment, arguing that they are entitled to qualified immunity.[8] "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F. 3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to receive qualified immunity, Defendants must first demonstrate that they were acting within their discretionary authority. *Al-Amin v. Smith*, 511 F. 3d 1317, 1324 (11th Cir. 2008). Here, there is no dispute that all Defendants were acting within their discretionary authority.

Once Defendants establish that they were acting within their discretionary authority, the

---

[8]Defendant Officers have raised other arguments in their motion for summary judgment, however, the Court declines to address these arguments as the Court finds they are entitled to qualified immunity.

Court must first determine whether "the plaintiff's allegations, if true establish a constitutional violation." *Id*. "If a constitutional right would have been violated under plaintiff's version of the facts, the next question is whether the constitutional right was clearly established." *Id*. In evaluating whether the law was clearly established, "the salient question . . . is whether the state of the law . . . [at the time of the violation] gave respondents fair warning that their alleged treatment [of the Plaintiffs] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Defendants argue that they are entitled to summary judgment because even under Plaintiffs' version of the facts, no constitutional violations occurred, and even if they did, such violations are not clearly established. Plaintiffs' remaining claims in Counts One and Four allege violations of the Fourth and Fourteenth Amendment respectively. These violations arise from Defendants' entry and search of the Faulkners' home on December 26, 2003 and their questioning of Chloe in a different room.[9] In response to Defendants' arguments in their motions for summary judgment that no constitutional violations occurred, Plaintiffs argue that summary judgment is inappropriate because genuine issues of material fact remain and that the constitutional rights which were violated in these circumstances were clearly established. After careful consideration, this Court disagrees and grants Defendants' motions for summary judgment.

The Fourth Amendment, incorporated to apply to the states by the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but

---

[9]Mr. Faulkner testified in his deposition that all of the children were taken into a separate room and questioned, *see* (D.E. No. 70-7, Mr. Faulkner Depo. at 20); however, the allegations in the First Amended Complaint relate only to the questioning of Chloe in a separate room, *see* (D.E. No. 45 at 15, 18).

>upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.  "A search [or seizure] is unreasonable under the Fourth Amendment, and thus unconstitutional, if it is performed without proper judicial authorization." *United States v. Hurd*, 499 F. 3d 963, 966 (9th Cir. 2007).  Plaintiffs first argue that the entry into their home, the search of their home, and the questioning of their children, specifically the questioning of Chloe as alleged in the operative Complaint, was unauthorized because the St. Lucie County Circuit Court's December 26, 2003 Order On Motion to Require Access to the Children ("Access Order") did not give Defendants permission to take these actions.  This Court disagrees.[10]

First, a search warrant is not required in this situation, and a court order could authorize Defendants' actions.  *See United States v. Giordano*, 416 U.S. 505, 554 (1974) (recognizing that a

---

[10] This Court acknowledges that in its Order Adopting in Part Magistrate Judge Lynch's Report and Recommendation and Granting in Part and Denying in Part Defendant's Motion to Dismiss, the Court stated the following:
>The Order on Motion to Require Access to the Children (D.E. No. 47, Exh. A) is not a search warrant and it does not state that Defendants have the authority to enter Plaintiffs' home or to search it.  The Order states only that "[t]he parents, Amanda James and Chris Faulkner, shall allow the Protective Investigator, Brad Graske, access to the children to conduct his investigation, out of the presence of the parents or parents['] agents." (D.E. No. 47, Exh. A at 2).  While this Order gave Defendants the right to question the children, including Chloe outside of the presence of the parents, it is not clear that they had the right to enter and search the home.  Thus, the Court cannot say that Plaintiffs have not sufficiently alleged a Fourth Amendment violation.

(D.E. No. 65 at 12).  The Court again acknowledges that the Order in question is not a search warrant, but in this context a court order could appropriately give authorization. *See United States v. Giordano*, 416 U.S. 505, 554 (1974) (recognizing that a court order can be the equivalent of a warrant); *Tenebaum v. Williams*, 193 F. 3d 581, 602 (2d Cir. 1999) (same).  Moreover, in ruling on the motions to dismiss the Court was only looking to determine whether a claim had been stated and could not assess all of the evidence now presented by the parties.  Finally, to the extent this prior ruling is seen as contrary to the Court's ruling in this Order, the Court vacates its prior ruling.

court order can be the equivalent of a warrant); *Tenebaum v. Williams*, 193 F. 3d 581, 602 (2d Cir. 1999) (same).  In addition, here the Access Order clearly gave Defendants the right to question the children.  The Order clearly states that "[t]he parents, Amanda James and Chris Faulkner, shall allow the Protective Investigator, Brad Graske, access to the children to conduct his investigation, out of the presence of the parents, or parents['] agents."  (D.E. No. 70-3 at 2).

The Court acknowledges that in the "Ordered and Adjudged" section of the Access Order, it does not specifically state that Defendants may enter or search the home.  However, the Access Order states without equivocation or condition that the court is granting the "Department's Motion to Allow Access to the Children." *Id*. at 2. In this motion, Mr. Graske stated that he needed a court order to investigate the abuse allegations, including the allegation that the home was "filthy."  (D.E. No. 70-2 at 2).  In addition, Mr. Graske states that the motion is filed pursuant to section 39.301(10), Florida Statutes, which specifically requires an "onsite assessment of a child's residence."[11]  Fla. Stat. § 39.301(10)(b)(4).

In addition, in the body of the Access Order, the Court makes several findings, including a finding that the abuse report received by DCF contained "allegations as set forth in [section] 39.301(10)," triggering the onsite assessment of the residence required in subsection (b)(4).  (D.E. No. 70-3 at 1).  The Access Order also finds that Mr. Graske is requesting "access to see the victim children listed in the report and conduct his investigation, including the condition of the home." *Id*.  Thus, there are no genuine issues of material fact with regard to the scope of the Access Order.  This Access Order authorized Defendants to enter the home, to perform a limited

---

[11]Section 39.301(10) applied because the allegations made in the abuse report involved physical abuse and a child younger than 3 years of age. Fla. Stat. § 39.301(10)(1). *See also* (D.E. No. 89, Joint Stipulation at 7).

search to assess the condition of the residence, and to separate the children from their parents and interview them.

Next, Plaintiffs argue that the search was unauthorized because even assuming the Access Order granted Defendants the right to take all of these actions, it was premised upon a false and misleading affidavit. This Court disagrees.

First, Plaintiffs argue that Mr. Graske's affidavit was false and misleading because Mr. Graske failed to state in the affidavit "that he had interviewed Jasmine the day before and received a perfectly logical explanation for both [the] rash and the black eye of the other child." (D.E. No. 81 at 9). Upon review of the record, it is clear that Mr. Graske did not receive "a perfectly logical explanation" for the rash and the black eye from Jasmine. Mr. Graske testified in his deposition that when he interviewed Jasmine on December 25, 2003 she simply confirmed that she had a rash and that Naya "had a bruise on her eye and that she hit a table." (D.E. No. 70-5, Graske Depo. at 27). This further confirms that the children had injuries, a fact that supports the issuance of the Access Order, but it does not explain their injuries. Moreover, Mr. Graske was still required to interview the other children and conduct an on-site assessment of the home. Fla. Stat. § 39.301(10). *See also* (D.E. No. 73-2, Exh. 1 at 4). Mr. Graske also stated in an affidavit filed with the Court that from his "experience performing numerous investigations, there are many reasons given by alleged abuse victims for the physical manifestations of abuse, many of which turn out to be untrue. Children, especially, are vulnerable to coaching by perpetrators to deny any abuse or they are often too afraid or protective to confirm abuse by a parent." (D.E. No. 73-2, Exh. 1 at 4). Thus, it cannot be said that Mr. Graske's failure to mention this interview in his affidavit was false or misleading.

Plaintiffs also argue that the affidavit was false and misleading because Mr. Graske claimed in his affidavit that the Plaintiffs' home was "filthy" despite the fact that at the time Mr. Graske signed the affidavit he had never been inside the home.  However, Mr. Graske states in the affidavit that he received "an abuse report from the DCF Hotline" and "allegedly" the Faulkner's home was "filthy."  (D.E. No. 70-2 at 2).  Thus, it is abundantly clear that in the affidavit Mr. Graske is repeating the allegations made in the call to the hotline.

Plaintiffs also argue that Mr. Graske's statements in the affidavit mistate what was alleged in the abuse report.  The abuse report states that "[t]he home is so messy that none of the children is permitted to bring friends there.  The specific conditions inside the home are unknown."  (D.E. No. 89, Joint Stipulation at 7).  *See also* (D.E. No. 73-2, Exh. A at 2).  In his affidavit, Mr. Graske listed as one of the allegations "[hazardous] conditions in the home to wit: the home is [filthy]."  (D.E. No. 70-2 at 2).  Mr. Graske's statement which paraphrases the allegations relating to the condition of the home is not so different from what was alleged as to be considered false or misleading.  Therefore, there are also no genuine issues of material fact that Mr. Graske's affidavit is false or misleading for this reason.

Finally, Plaintiffs argue that the affidavit was misleading because Mr. Graske "left out the fact that he had been accompanied by a police officer during his initial visit to the home on December 25, 2003 and the officer had filed a report stating there was no probable cause to believe the children were in any danger."  (D.E. No. 81 at 10-11). Plaintiffs are referring to a report filed by Officer Vega.  In this report, Officer Vega states:

> Due to the nature of the abuse allegation and lack thereof, a lack of corroborating evidence or statements of abuse against the alleged victims and the fact that B. Graske would visit with the alleged victim shortly after speaking with Mrs. Faulkner, no exigent circumstances existed to believe the alleged victims were in

-13-

danger of being or having been abused.

(D.E. No. 70-5, Graske Depo. at 57). *See also* (D.E. No. 45 at 2). This report does not state that "there was no probable cause to believe the children were in any danger." Officer Vega's report states that at that time there did not appear to be "exigent circumstances" which required immediate intervention. More importantly, Officer Vega states in his report that his findings are based in part on the fact that Mr. Graske intended to shortly thereafter visit the alleged victims. As this very report contemplated the interview with the children that Graske was seeking in his motion to obtain the Access Order, it is unclear why it was necessary to include the "findings" of this report in the affidavit. As stated above, Mr. Graske clearly stated in his affidavit that the allegations of abuse were just that, allegations. Moreover, it is undisputed that on December 25, 2003, neither officer was permitted to enter the Faulkner home nor were they permitted to see or speak with Naya or Chloe. Thus, Mr. Graske's failure to mention Officer Vega's report was not false or misleading.

Finally, to the extent Plaintiffs have alleged that the Fourth Amendment search was unreasonable because Defendants forced their way into the home with guns drawn, this Court also finds no genuine issues of material fact remain as to this issue. The evidence in the record demonstrates that, at most, the forced entry in this case consisted of a Defendant pushing the door open with his or her arm. (D.E. No. 70-7, Mr. Faulkner Depo. at 16-18). Plaintiff Mrs. James-Faulkner testified to an even lesser intrusion, stating that the Defendants simply walked into the home behind her. (D.E. No. 70-6, Mrs. James-Faulkner at 82).

There was also testimony that one of the Officer Defendants, although it is unclear which one, had his or her gun drawn. (D.E. No. 70-7, Mr. Faulkner at 16-17). However, there is also

undisputed testimony that Plaintiffs owned pit bulls and Mrs. James-Faulkner conveyed to the officers that she "couldn't guarantee that they couldn't get out." (D.E. No. 70-7, Mrs. James-Faulkner at 84). She also testified that she saw the officers place their hands on their holsters in response to the barking dogs. *Id*. at 83.

Moreover, as Mrs. James-Faulkner testified, on December 26, 2003, even after viewing the Access Order, she would not allow the officers to enter her home nor did she give them access to her children. *Id*. at 72-82. Mrs. James-Faulkner testified that she kept the officers outside for a "couple of hours." *Id*. at 78. After careful consideration of the facts in the light most favorable to Plaintiffs, the Court finds that the steps Defendants took to fulfill their obligations under this Access Order were not unreasonable, and Plaintiffs' Fourth Amendment rights were not violated.

Plaintiffs also allege a Fourteenth Amendment violation for the same reasons that they have alleged a Fourth Amendment violation. "[P]arents have a constitutionally protected liberty interest in the care, custody and management of their children." *Doe v. Kearney*, 329 F. 3d 1286, 1293 (11th Cir. 2003). Thus, before a child is removed from the care, custody and management of his or her parent, said parent is entitled to due process. *Id*. However, this liberty interest is not absolute as "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children --- particularly where the children need to be protected from their own parents." *Croft v. Westmoreland County Children & Youth Servs.*, 103 F. 3d 1123, 1125 (3d Cir. 1997). *See also Doe*, 329 F. 3d at 1293 (recognizing that "'the State has a profound interest in the welfare of the child, particularly his or her being sheltered from abuse.'") (quoting *Tenenbaum*, 193 F. 3d at 593 (2d Cir. 1999)). "The right to familial integrity, in other words, does not include a right to remain free from child abuse investigations." *Croft*, 103 F. 3d at 1125.

In order to demonstrate a violation of their liberty interest in familial integrity, "parents need to prove that a state actor interfered with a protected liberty interest without sufficient justification." *Foy v. Holston*, 94 F. 3d 1528, 1536 (11th Cir. 1996).

Here, Plaintiffs make the same allegations under the Fourteenth Amendment that they made under the Fourth Amendment, and for the same reasons that there are no genuine issues of material fact as to Plaintiffs' Fourth Amendment claim, there are also no genuine issues of material fact as to Plaintiffs' Fourteenth Amendment claim. *See Doe*, 329 F. 3d at 1299 (stating that plaintiffs' Fourth Amendment claims mirrored their procedural due process claims and that "[f]or the same reasons" appellants could not show "a procedural due process violation they could also not show a Fourth Amendment violation."). The Court also notes that here the children were only briefly taken from the care, management, and welfare of their parents so that they could be questioned. Moreover, this removal consisted of moving the children to a bedroom in the same house as their parents. They were then returned to their parents' care. Thus, the Court finds that there are no genuine issues of material fact and no constitutional violations occurred.

In addition, even if a constitutional violation did occur, any constitutional violation under these circumstances was not in violation of clearly established law. "To determine whether the applicable law was clearly established at the time of the challenged conduct, reference must be made to the decisions of the Eleventh Circuit, the United States Supreme Court, and the Florida Supreme Court." *Blanco v. City of Clearwater, Fla.*, 9 F. Supp. 2d 1316, 1319 (M.D. Fla. 1998). It is Plaintiffs' burden to demonstrate that clearly established law has been violated. *Al-Amin*, 511 F. 3d at 1324. In determining whether a law is clearly established Plaintiffs are not required to demonstrate that "the very action in question has previously been held unlawful." *Hope*, 536 U.S.

at 739.  "[T]he salient question . . . is whether the state of the law [at the time of the incident] gave . . . [Defendants] fair warning that their alleged treatment of . . . [Plaintiffs] was unconstitutional." *Hope*, 536 U.S. at 741.  Here, Plaintiffs have not met their burden.

Plaintiffs have not cited any cases and the Court has not found any where law enforcement or child protection investigators were held liable in similar situations.[12]  "[S]tate officials who act to investigate or to protect children where there are allegations of abuse almost never act within the contours of 'clearly established law.'" *Foy v. Holston*, 94 F. 3d 1528, 1537 (11th Cir. 1996) (quoting Frazier v. Bailey, 957 F.2d 920, 931 (1st Cir.1992)).  "Thus, it is no surprise that state officials who investigate allegations of child abuse and in so doing disrupt a family have been entitled to qualified immunity." *Foy*, 94 F. 3d at 1537.  Therefore, it is hereby:

**ORDERED and ADJUDGED** that

1. Defendants, Lisa Carrasquillo and Fred Williams' Motion for Summary Judgment (D.E. No. 70) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (D.E. No. 73) is **GRANTED**.

3. A Final Judgment shall be entered by separate order.

4. This Case is **CLOSED** and all pending motions are **DENIED** as **MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 3 day of November, 2008.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record

---

[12] Plaintiffs argue that *Doe v. Kearney* gave Defendants fair warning that their actions were unconstitutional.  This Court disagrees and notes that in *Doe*, the Court held in relevant part that a child welfare worker did not violate a parents' or their minor children's Fourth or Fourteenth Amendment rights by her warrantless removal of the minor children from their home. 329 F. 3d at 1299.